1  Naomi Spector (SBN 222573)
   Email: nspector@kamberlaw.com
2  Christopher D. Moon (SBN 246622)
   Email: cmoon@kamberlaw.com
3  **KAMBERLAW, LLP**
   9404 Genesee Avenue, Suite 340
4  La Jolla, California 92037
   Phone: 310.400.1051
5  Fax: 858.800.4277

6  Counsel for Plaintiff Elise Stewart,
   and the putative Classes

7

8              **IN THE UNITED STATES DISTRICT COURT**

9            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

11  Elise Stewart, individually, on behalf      **Case No.:**
    of herself and others similarly
12  situated,                                    **CLASS ACTION COMPLAINT
                                                 FOR:**
13                         Plaintiff,

14          vs.                                  **1.  UNFAIR AND UNLAWFUL
                                                 BUSINESS ACTS AND PRACTICES**
15  PROCTER & GAMBLE CO.,                        **(CAL. BUS & PROF. CODE §17200
                                                 *ET SEQ.*);**
16                         Defendant.            **2.  DECEPTIVE ADVERTISING
                                                 PRACTICES (CAL. BUS &
17                                               PROF.CODE §§ 17500, *ET SEQ.*);**
                                                 **3.  CONSUMER LEGAL
18                                               REMEDIES ACT (CAL. CIV. CODE
                                                 § 1750, *ET SEQ.*);**
19                                               **4.  BREACH OF EXPRESS
                                                 WARRANTY; AND**
20                                               **5.  QUASI-CONTRACT.**

21

22                                               **DEMAND FOR JURY TRIAL**

23

24  _____

25          Plaintiff Elise Stewart, individually, and on behalf of others similarly situated,

26  by and through her undersigned counsel, files this Class Action Complaint against

27  Defendant Procter & Gamble Co. ("Defendant" or "P&G") and states as follows:

28

_____
                    **CLASS ACTION COMPLAINT**

## **NATURE OF THE ACTION**

1.     This case arises out of Defendant's unlawful merchandising practices with respect to its Pampers Natural Clean wipes ("Product").   Defendant falsely and deceptively labels, markets and advertises the Product as being natural, both by the prominent representation "Natural Clean" on the packaging, and by the Product's other packaging design features, which include green coloring and nature-related images, such as flowers, trees and leaves.

2.     Contrary to these material representations and omissions, the Product contains numerous non-natural, artificial, and/or synthetic ingredients, including Phenoxyethanol[1], PEG-40 Hydrogenated Castor Oil, Citric Acid, Sodium Citrate, Sodium Benzoate, Disodium EDTA, BIS-PEG/PPG-16/16 PEG/PPG-16/16 Dimethicone, Caprylic/Capric Triglyceride, Xanthan Gum, and Polypropylene. Accordingly, Defendant's conduct is deceptive and misleading, and therefore unlawful.

3.     As a result of its unlawful conduct, Defendant has obtained substantial profits from its sales of the Product, and has retained these profits.   Plaintiff Elise Stewart ("Plaintiff") and Class Members have suffered actual damages. Plaintiff brings this action individually and on behalf of those similarly situated.   Plaintiff seeks to represent a National Class and a California Subclass (defined *infra*.).   Plaintiff seeks damages, interest thereon, reasonable attorneys' fees and costs, restitution, other equitable relief, and disgorgement of all benefits Defendant has enjoyed from its unlawful and deceptive business practices, as detailed herein.   In addition, Plaintiff seeks injunctive relief to stop Defendant's unlawful conduct in misleadingly and deceptively labeling, advertising, and marketing the Product.   Plaintiff makes these allegations based on her personal knowledge as to herself and, otherwise, on information and belief based on investigation of counsel.

---

[1] It appears that Defendant may have removed Phenoxyethanol from the Product in or about March 2016.

## JURISDICTION AND VENUE

4.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

5.    This Court has personal jurisdiction over Procter & Gamble Co. because Defendant's contacts with the forum are continuous and substantial, and Defendant intentionally availed itself of the markets within California through its sales of the Product to California consumers.

6.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant engages in continuous and systematic business activities within the State of California.  Moreover, a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District, including Plaintiff's purchase of the Product in this judicial district. *See also* Declaration of Elise Stewart Regarding Venue Pursuant to Cal. Civ. Code § 1780(d), attached hereto as Exhibit A.

## PARTIES

7.    Plaintiff Elise Stewart is a resident of San Pedro, California.  Ms. Stewart purchased Pampers "Natural Clean" wipes numerous times during the class period. Plaintiff's claim is typical of all Class members in this regard.   In addition, the advertising and labeling on the package of the Products purchased by Plaintiff and the Product ingredients are typical of the advertising, labeling and ingredients of the Products purchased by members of the Classes.

8.    Defendant Procter & Gamble Co. is a Ohio corporation with its principal place of business at One Procter & Gamble Plaza, Cincinnati, Ohio 45202.

9.    Defendant and its agents promoted, marketed and sold the Product at issue in this jurisdiction and in this judicial district.  The unfair, unlawful, deceptive, and misleading advertising and labeling of the Product was prepared and/or approved by

3

Defendant and its agents, and was disseminated by Defendant and its agents through labeling and advertising containing the misrepresentations alleged herein.

## FACTUAL ALLEGATIONS

### A. Contrary to Defendant's Representations that the Product Is Natural, the Product Contains Numerous Non-Natural, Artificial, and/or Synthetic Ingredients

10.     P&G manufactures, markets, promotes, advertises, and sells baby-care products, including the Product at issue.

11.     Each year, consumers purchase billions of dollars' worth of "natural" products.  For example, in 2015, consumers in the United States purchased $42.1 billion worth of natural products, an increase from $34.1 billion in 2013.[2] Given the strong demand for natural products, companies like Defendant are greatly incentivized to label and market their products as being "natural."

12.     Seeking to profit from consumers' desire for natural products, P&G markets, advertises and labels the Product as being natural, both by the prominent representation "Natural Clean" on the packaging, and by the Product's other packaging design features, which include green coloring and nature-related images, such as flowers, trees, and leaves.



---

[2] https://www.statista.com/statistics/492667/dollar-sales-natural-products-united-states/ (last visited January 7, 2018).

4

13.    Contrary to these material representations and omissions, the Product contains numerous non-natural, artificial and/or synthetic ingredients, including Phenoxyethanol, PEG-40 Hydrogenated Castor Oil, Citric Acid, Sodium Citrate, Sodium Benzoate, Disodium EDTA, BIS-PEG/PPG-16/16 PEG/PPG-16/16 Dimethicone, Caprylic/Capric Triglyceride, Xanthan Gum, and Polypropylene. Each of these ingredients is non-natural, artificial and/or synthetic, as follows:

14.    The U.S. Food and Drug Administration ("FDA") has stated that phenoxyethanol is "a preservative that is primarily used in cosmetics and medications" and that it can "depress the central nervous system and may cause vomiting and diarrhea" in infants.[3]    In addition, the French Agence Nationale de Securite du Medicament et des Produits de Sante has cautioned consumers not to use wipes containing phenoxyethanol on children under the age of three because of health concerns related to reproductive and developmental toxicity.

15.    In addition, the Federal Trade Commission ("FTC") charged several companies with falsely claiming in advertisements that their products were all-natural or 100% natural when those products contained non-natural, synthetic ingredients, including phenoxyethanol.[4] The charged companies were barred from making similar representations in the future.[5]

---

[3] https://wayback.archive-it.org/7993/20170112232100/http://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm116900.htm (last visited Jan. 7, 2018).

[4] https://www.ftc.gov/news-events/press-releases/2016/04/four-companies-agree-stop-falsely-promoting-their-personal-care (last visited Jan. 7, 2018); https://www.ftc.gov/system/files/documents/cases/160412shikai-cmpt.pdf (last visited Jan. 7, 2018); https://www.ftc.gov/system/files/documents/cases/160412edenbodyworkscmpt.pdf (last visited Jan. 7, 2018).

[5] https://www.ftc.gov/news-events/press-releases/2016/07/ftc-approves-four-final-orders-barring-companies-making-false-all (last visited Jan. 7, 2018).

CLASS ACTION COMPLAINT

16.     The Material Safety Data Sheet (MSDS) on phenoxyethanol states that it can cause skin and lung irritation, and that it may also be toxic to the kidneys, nervous system, and liver, and repeated, long-term exposure can cause organ damage.  The MSDS further states that the toxic effects can occur through inhalation, skin exposure, and ingestion.[6]

17.     PEG-40 Hydrogenated Castor Oil, used as an emulsifier and skin-conditioning agent, is a polyethylene glycol derivative of hydrogenated castor oil. Specifically, castor oil is ethoxylated with ethylene oxide, a petroleum-based chemical. As a by-product of the ethoxylation process, the carcinogen 1,4 dioxane may be present as a contaminant.

18.     BIS-PEG/PPG-16/16 PEG/PPG-16/16 Dimethicone is an emulsifier, and is a derivative of dimethicone.  Dimethicone is a synthetic ingredient used as a lubricant and conditioning agent.  The FTC recently charged several companies with falsely claiming in advertisements that their products were all-natural or 100% natural when those products contained non-natural, synthetic chemical ingredients, such as dimethicone.[7]  The charged companies were barred from making similar representations in the future.[8]

_____

[6] https://www.acme-hardesty.com/wp-content/uploads/Phenoxyethanol-SDS.pdf.

[7] https://www.ftc.gov/news-events/press-releases/2016/04/four-companies-agree-stop-falsely-promoting-their-personal-care (last visited Jan. 7, 2018); https://www.ftc.gov/system/files/documents/cases/160412shikai-cmpt.pdf (last visited Jan. 7, 2018); https://www.ftc.gov/system/files/documents/cases/160412rockymountaincmpt.pdf (last visited Jan. 7, 2018); https://www.ftc.gov/system/files/documents/cases/160412beyondcoastalcmpt.pdf (last visited Jan. 7, 2018).

[8] https://www.ftc.gov/news-events/press-releases/2016/07/ftc-approves-four-final-orders-barring-companies-making-false-all (last visited Jan. 7, 2018).

19.    <u>Caprylic/Capric Triglyceride</u>, which is used as a skin-conditioning agent, is a mixed triester of glycerin and caprylic and capric acids.  Glycerin is recognized in Federal Regulations as synthetic.[9]

20.    <u>Sodium Citrate</u> is a synthetic chemical that can be used as an emulsifier, acidity regulator, and preservative.  Sodium citrate is recognized in Federal Regulations as synthetic.[10]

21.    <u>Sodium Benzoate</u> is a synthetic preservative.  According to Federal Regulation 21 C.F.R. § 184.1733, sodium benzoate "is not found to occur naturally." Indeed, the FDA has stated that the use of the term "natural" in association with a product containing sodium benzoate is false and misleading.[11]

22.    <u>Disodium EDTA</u> is a chelation agent and preservative.  EDTA stands for ethylenediaminetetraacetic acid.    It is synthesized in a laboratory from ethylenediamine, formaldehyde, and sodium cyanide.  Disodium EDTA is the salt produced as a result.

23.    <u>Citric Acid</u> is a synthetic preservative made by fermenting certain molds, which produces citric acid as a byproduct of metabolism.

24.    <u>Xanthan Gum</u> is used as a thickener or stabilizer, and is recognized in Federal Regulations as synthetic.[12]

25.    In addition, the Product's fabric is made, in part, of <u>Polypropylene</u>, which is a synthetic plastic.

26.    7 U.S.C. § 6502(21) defines the term "synthetic" as "a substance that is formulated or manufactured by a chemical process or by a process that chemically

---

[9] *See* 7 C.F.R. § 205.605(b).

[10] *See* 7 C.F.R. § 205.605(b).

[11] http://fda-warning-letters.blogspot.com/2011/03/shemshad-food-products-inc-31111.html (last visited Jan. 7, 2018).

[12] *See* 7 C.F.R. § 205.605(b).

changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes."

27.    Furthermore, Merriam-Webster defines "natural" as "existing in or produced by nature: not artificial."

28.    In addition, the FTC has cautioned that "[m]arketers that are using terms such as natural must ensure that they can substantiate whatever claims they are conveying to reasonable consumers.  If reasonable consumers could interpret a natural claim as representing that a product contains no artificial ingredients, then the marketer must be able to substantiate that fact."[13]

29.    Reasonable consumers, including Plaintiff, expect a product that is labeled or advertised as being "natural" to be free of synthetic, artificial, highly processed, and/or non-natural ingredients.  In addition, reasonable consumers, including Plaintiff, expect a baby-care product that is labeled or advertised as "natural" to be free from ingredients that are potentially harmful to babies and children.

30.    Consumers have become increasingly concerned about the effects of synthetic, artificial, and/or non-natural ingredients in personal-care products.  Indeed, consumers, including Plaintiff, are willing to pay, and have paid, a premium for products advertised, marketed, and labeled as being "natural" over products containing non-natural, artificial, and/or synthetic ingredients.[14]

---

[13] Guides for the Use of Environmental Marketing Claims, 75 FR 63552-01, 63586 (Oct. 15, 2010).

[14] For example, "[a] recent study by Kline Research suggests a growing number of consumers are choosing to pay a premium for products that are natural or that they 'perceive to be natural.'"  Shoshanna Delventhal, *Study Shows Surge in Demand for 'Natural' Products* (Feb. 22, 2017), *available at* https://www.investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp#ixzz53PKrMfjG (last visited Jan. 7, 2018).

**CLASS ACTION COMPLAINT**

31.    P&G materially misled and failed to adequately inform consumers, including Plaintiff, that the Product contains non-natural, artificial, synthetic and/or potentially harmful ingredients.

32.    Based on Defendant's uniform material misrepresentations and omissions, consumers, including Plaintiff, have purchased the Product to their detriment.

### B.    Plaintiff Purchased the Misbranded Product

33.    Plaintiff Elise Stewart purchased Pampers Natural Clean wipes numerous times during the class period from Target and Vons stores in the single package size. Plaintiff paid approximately $3.00 per pack.

34.    Plaintiff relied on P&G's representations in making the decision to purchase the Product, including that the Product is "natural."

35.    At the time Plaintiff purchased the Product, Plaintiff did not know, and had no reason to know, that the Product label, marketing and advertising were misleading, deceptive and unlawful as set forth herein.  Plaintiff would not have purchased the Product, or would have purchased the Product on different terms, if she had known the truth.

36.    It is possible, however, that Plaintiff would purchase the Product in the future if the Product was properly labeled, and/or the ingredients complied with the labeling and advertising statements, including that they only contained "natural" ingredients, and no longer contained Phenoxyethanol, PEG-40 Hydrogenated Castor Oil, Citric Acid, Sodium Citrate, Sodium Benzoate, Disodium EDTA, BIS-PEG/PPG-16/16 PEG/PPG-16/16 Dimethicone, Caprylic/Capric Triglyceride, Xanthan Gum, and Polypropylene.

### CLASS DEFINITION AND CLASS ALLEGATIONS

37.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself, on behalf of all others similarly situated, and as a member the Class and Subclass defined as follows (collectively, the "Classes"):

All citizens of the United States who, within the relevant statute of limitations period, purchased Defendant's Product ("Nationwide Class"); and

All citizens of California who, within four years prior to the filing of the Complaint, purchased Defendant's Product ("California Subclass").

38.    Excluded from the Classes are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

39.    Plaintiff reserves the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

40.    This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

41.    **Numerosity**:  Members of the Classes are so numerous that joinder of all members is impracticable.  Upon information and belief, the Nationwide Class consists of hundreds of thousands of purchasers dispersed throughout the United States, and the Subclass likewise consists of hundreds of thousands of purchasers throughout the State of California.  Accordingly, it would be impracticable to join all members of the Nationwide Class and California Subclass before the Court.

42.    **Common Questions Predominate:**  There are numerous and substantial questions of law or fact common to all members of the Classes that predominate over any individual issues.  Included within the common questions of law or fact are:

- Whether, contrary to Defendant's uniform, material representations

10

and omissions, the Product is not natural;

- Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising and selling the Product;

- Whether Defendant violated California Bus. & Prof. Code § 17200, *et seq*.; Cal. Bus. & Prof. Code § 17500, *et seq*.; and the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.;

- Whether Defendant committed a breach of express warranty;

- Whether Plaintiff and the Classes are entitled to equitable and/or injunctive relief;

- Whether Plaintiff and the Class members have sustained damages as a result of Defendant's unlawful conduct;

- The proper measure of damages sustained by Plaintiff and Class Members; and

- Whether Defendant was unjustly enriched by its deceptive practices.

43. **Typicality:** Plaintiff's claims are typical of the claims of the members of the Classes she seeks to represent because Plaintiff, like the Class members, purchased Defendant's misbranded Product.  Defendant's unlawful, unfair and/or fraudulent conduct concerns the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiff and the Classes sustained similar injuries arising out of Defendant's conduct.  Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

44. **Adequacy:** Plaintiff is an adequate representative of the Classes she seeks to represent because her interests do not conflict with the interests of the members of the Classes Plaintiff seeks to represent.  Plaintiff will fairly and adequately protect the interests of members of the Classes and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer-protection litigation.

45. **Superiority and Substantial Benefit:** A class action is superior to other

methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Classes is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

      a.    The claims presented in this case predominate over any questions of law or fact, if any exists at all, affecting any individual member of the Classes;

      b.    Absent a Class, the members of the Classes will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

      c.    Given the size of individual Class members' claims, few, if any, members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent members have no substantial interest in individually controlling the prosecution of individual actions;

      d.    When the liability of Defendant has been adjudicated, claims of all members of the Classes can be administered efficiently and/or determined uniformly by the Court; and

      e.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the Classes can seek redress for the harm caused to them by Defendant.

46.    Because Plaintiff seeks relief for all members of the Classes, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendant.

47.    The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to

act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

48.    The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are also met as questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

49.    Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Unfair and Unlawful Business Acts and Practices
### (Business and Professions Code § 17200, *et seq.*)
### (*for the California Subclass*)

50.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

51.    Defendant's conduct constitutes an unfair business act and practice pursuant to California Business & Professions Code §§ 17200, *et seq.* (the "UCL"). The UCL provides, in pertinent part:  "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

52.    Plaintiff brings this claim seeking equitable and injunctive relief to stop Defendant's misconduct, as complained of herein, and to seek restitution of the amounts Defendant acquired through the unfair, unlawful, and fraudulent business practices described herein.

53.    Defendant's knowing conduct, as alleged herein, constitutes an "unfair" and/or "fraudulent" business practice, as set forth in California Business & Professions

Code §§ 17200-17208.

54.     Defendant's conduct was and continues to be unfair and fraudulent because, directly or through its agents and employees, Defendant made uniform materially false representations and omissions that the Product was "natural" when in fact it was not.

55.     Defendant is aware that the representations and omissions it has made about the Product was and continues to be false and misleading.

56.     Defendant had an improper motive—to derive financial gain at the expense of accuracy or truthfulness—in its practices related to the labeling and advertising of the Product.

57.     There were reasonable alternatives available to Defendant to further Defendant's legitimate business interests, other than the conduct described herein.

58.     Defendant's misrepresentations of material facts, as set forth herein, also constitute an "unlawful" practice because they violate California Civil Code §§ 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

59.     Defendant's conduct in making the representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors.    This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair business practice under California Business & Professions Code §§ 17200-17208.

60.     In addition, Defendant's conduct was, and continues to be, unfair, in that its injury to countless purchasers of the Product is substantial, and is not outweighed by any countervailing benefits to consumers or to competitors.

61.     Moreover, Plaintiff and members of the California Subclass could not have reasonably avoided such injury.  Defendant's uniform, material representations and omissions regarding the Product were likely to deceive, and Defendant knew or should have known that its representations and omissions were untrue and misleading.

Plaintiff purchased the Product in reliance on the representations made by Defendant, as alleged herein.

62.     Plaintiff and members of the California Subclass have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the monies paid to Defendant for the Product that lacked the characteristics advertised, interest lost on those monies, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Subclass members.

63.     As a result of the business acts and practices described above, Plaintiff and members of the California Subclass, pursuant to § 17203, are entitled to an Order enjoining such future wrongful conduct on the part of Defendant and such other Orders and judgments that may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendant.

64.     Pursuant to Civil Code § 3287(a), Plaintiff and the California Subclass are further entitled to pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct.   The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the California Subclass are entitled to interest in an amount according to proof.

**SECOND CAUSE OF ACTION**
**Deceptive Advertising Practices**
**(California Business & Professions Code §§ 17500,** *et seq.***)**
**(*for the California Subclass*)**

65.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

66.     California Business & Professions Code § 17500 prohibits "unfair, deceptive, untrue or misleading advertising . . . ."

67.     Defendant violated § 17500 when it represented, through its false and

15

misleading advertising and other express representations, that Defendant's Product possessed characteristics and value that it did not actually have.

68.    Defendant's deceptive practices were specifically designed to induce reasonable consumers like Plaintiff to purchase the Product.  Defendant's uniform, material representations and omissions regarding the Product were likely to deceive, and Defendant knew or should have known that its uniform representations and omissions were untrue and misleading.  Plaintiff purchased the Product in reliance on the representations made by Defendant, as alleged herein.

69.    Plaintiff and members of the California Subclass have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the monies paid to Defendant for the Product that lacked the characteristics advertised, interest lost on those monies, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Subclass members.

70.    The above acts of Defendant, in disseminating material misleading and deceptive representations and statements throughout California to consumers, including Plaintiff and members of the California Subclass, were and are likely to deceive reasonable consumers in violation of § 17500.

71.    In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of § 17500.

72.    Defendant continues to engage in unlawful, unfair and deceptive practices in violation of § 17500.

73.    As a direct and proximate result of Defendant's unlawful conduct in violation of § 17500, Plaintiff and members of the California Subclass, pursuant to § 17535, are entitled to an Order of this Court enjoining such future wrongful conduct on the part of Defendant, and requiring Defendant to disclose the true nature of its misrepresentations.

**CLASS ACTION COMPLAINT**

74.    Plaintiff and members of the California Subclass also request an Order requiring Defendant to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendant by means of such acts of false advertising, plus interests and attorneys' fees.

**THIRD CAUSE OF ACTION**
**Consumer Legal Remedies Act**
**(Cal. Civ. Code § 1750, *et seq*.)**
***(for the California Subclass*)**

75.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

76.    Plaintiff brings this action pursuant to California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*.

77.    The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

78.    The Product is a "good," as defined by the CLRA in California Civil Code §1761(a).

79.    Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

80.    Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d).

81.    Purchase of the Product by Plaintiff and members of the California Subclass are "transactions," as defined by the CLRA in California Civil Code §1761(e).

82.    P&G violated Section 1770(a)(5) by representing that the Product has "characteristics, . . . uses [or] benefits . . . which [it] does not have" in that the Product is falsely labeled and advertised as being "natural." Defendant knew that consumers

will often pay more for products with that attribute and has unfairly profited from its false and misleading claims.

83.    Similarly, P&G violated section 1770(a)(7) by representing that the Product "is of a particular standard, quality, or grade . . . if it is of another" by falsely and deceptively labeling and advertising the Product as being "natural."

84.    In addition, P&G violated section 1770(a)(9) by advertising the Product "with intent not to sell it as advertised" in that the Product is falsely labeled and advertised as being "natural."

85.    Defendant's uniform, material, representations and omissions regarding the Product were likely to deceive, and Defendant knew or should have known that its representations and omissions were untrue and misleading.

86.    Plaintiff and members of the California Subclass could not have reasonably avoided such injury.  Plaintiff and members of the California Subclass were unaware of the existence of facts that Defendant suppressed and failed to disclose; and, Plaintiff and members of the California Subclass would not have purchased the Product and/or would have purchased it on different terms had they known the truth.

87.    Plaintiff and members of the California Subclass have been directly and proximately injured by Defendant's conduct.  Such injury includes, but is not limited to, the purchase price of the Product and/or the price of the Product at the price at which it was offered.

88.    Given that Defendant's conduct violated § 1770(a)(5), Plaintiff and members of the California Subclass are entitled to seek and seek injunctive relief to put an end to Defendant's violations of the CLRA.[15]

---

[15] Concurrent with the filing of this Complaint, Plaintiff is sending a letter to Defendant pursuant to California Civil Code § 1782(a).  At the appropriate time, Plaintiff intends to file an amended Complaint to also seek compensatory, monetary and punitive damages, in addition to equitable and injunctive relief, and for such other relief as is provided in California Civil Code § 1780.

**CLASS ACTION COMPLAINT**

89.     Moreover, Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers to increase the sale of the Product.

90.     Plaintiff further requests that the Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to § 1780(a)(2).

**FOURTH CAUSE OF ACTION**
**Breach of Express Warranty**
***(for the Nationwide Class and California Subclass)***

91.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth herein.

92.     By advertising and selling the Product at issue, Defendant made promises and affirmations of fact on the Product's labeling and packaging, and through its marketing and advertising, as described herein.   This labeling and advertising constitutes express warranties and became part of the basis of the bargain between Plaintiff and members of the Classes, and Defendant.

93.     Defendant purports, through its labeling, packaging, marketing and advertising, to create express warranties that the Product is "natural."

94.     Despite Defendant's express warranties about the nature of the Product, ingredients in the Product are not natural, and the Product was, therefore, not what Defendant represented it to be.

95.     Accordingly, Defendant breached express warranties about the Product and its qualities because the Product does not conform to Defendant's affirmations and promises.

96.     As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and members of the Classes were harmed in the amount of the purchase price they paid for the Product.  Further, Plaintiff and members of the Classes have suffered and continue to suffer economic losses and other general and specific

damages including, but not limited to, the amounts paid for the Product, and any interest that would have accrued on those monies, in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
## QUASI-CONTRACT
### (*for the Nationwide Class and California Subclass*)

97.    Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

98.    By purchasing the Product, Plaintiff and members of the Classes conferred a benefit on Defendant in the form of the purchase price of the Product.

99.    Defendant had knowledge of such benefits.

100.   Defendant appreciated the benefit because, were consumers not to purchase the Product, Defendant would not generate revenue from the sales of the Product.

101.   Defendant's acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent and misleading representations and omissions.

102.   Equity cannot in good conscience permit Defendant to be economically enriched for such actions at the expense of Plaintiff and members of the Class, and therefore restitution and/or disgorgement of such economic enrichment is required.

## **PRAYER**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

A. For an order certifying the Nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Nationwide Class and California Subclass; and naming Plaintiff's attorneys as Class Counsel to represent the Classes;

B. For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

**CLASS ACTION COMPLAINT**

C. For an order awarding, as appropriate, compensatory and monetary damages, restitution or disgorgement to Plaintiff and the Classes for all causes of action;

D. For an order requiring Defendant to immediately cease and desist from selling its misbranded Product in violation of law; enjoining Defendant from continuing to label, market, advertise, distribute, and sell the Product in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

E. For an order awarding attorneys' fees and costs;

F. For an order awarding punitive damages;

G. For an order awarding pre- and post-judgment interest; and

H. For such other and further relief as the Court deems just and proper.

DATED: January 8, 2018            **KAMBERLAW, LLP**


By: /s/ Naomi B. Spector
Naomi B. Spector

*Attorneys for Plaintiff and the putative Classes*

**CLASS ACTION COMPLAINT**